[Civ. No. 4649. Second Appellate District, Division One.—July 20, 1925.]

## C. E. ARCHER, Plaintiff and Respondent, v. H. B. MILLER, Defendant and Appellant.

[Civ. No. 4651. Second Appellate District, Division One.—July 20. 1925.]

## C. E. ARCHER, Plaintiff and Appellant, v. H. B. MILLER, Defendant and Respondent.

[1] QUIETING TITLE—CONTRACT FOR LEASE AND RIGHT TO PURCHASE—SPECIFIC PERFORMANCE—INSUFFICIENCY OF ANSWER.—In an action to quiet title to land, an answer which seeks to establish that said land is subject to the rights of the defendant under a contract whereby plaintiff leased the land to defendant on certain conditions with a right to purchase the same, and which prays that defendant be given possession of said land so that he may fulfill and carry out the contract, is insufficient where it contains no allegation as to ths actual value of the land, and the facts stated are not sufficient to show that the contract was just and reasonable or that the consideration was adequate.

[2] ID.—FACTS SHOWING CONTRACT JUST AND REASONABLE—ANSWER.—In such action, the answer should have alleged the facts showing that the contract was just and reasonable.

[3] ID.—PLANTING ORANGE TREES—CONTRACT FOR PERSONAL SERVICE—SPECIFIC PERFORMANCE—MUTUALITY OF REMEDIES.—In such action, the contract between the parties, in that it requires the defendant to prepare the land for planting and to plant, maintain and care for orange trees on the entire tract, cannot be specifically enforced because it calls for the performance of personal service by defendant, and is not therefore such a contract which furnishes a basis for mutuality of remedy.

[4] ID.—MUTUALITY OF REMEDY—SPECIFIC PERFORMANCE.—Mutuality of remedy is an indispensable prerequisite to the specific performance of a contract. The remedy must be mutual, as well as the obligation, and when the contract is of such a nature that it cannot be specifically enforced as to one of the parties, equity will not enforce it against the other.

1. See 23 Cal Jur. 493; 25 R. C. L. 330.
3. See 23 Cal. Jur. 479; 25 R. C. L. 303.
4. See 23 Cal. Jur. 445; 25 R. C. L. 232.

[5] ID.—PERFORMANCE.—Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance.

[6] ID.—PLEADING—EVIDENCE.—In such action, defendant's answer fails to state a defense and fails to show any right to affirmative relief, where it contains no statement of facts showing performance by the defendant or excuse for nonperformance by him of the conditions prescribed to be performed by him "before or on" a specified date; and the trial court erred in overruling plaintiff's objection to evidence offered in support of the affirmative defense.

[7] ID.—PURCHASE OF ORANGE TREES—ASSIGNMENTS—CONSTRUCTION.— The provision of the agreement between plaintiff and defendant whereby the latter agreed to purchase first-grade orange trees to be planted on the land in question and to make said purchase "by contract with one-third cash payment or more down before or on" a specified date, "and to assign such contract and all his interest therein" to the plaintiff, and that if this was not done the defendant would forfeit all his interest in said contract and orange trees and all payments made by him, required not only that the contract be made not later than said specified date, but that the assignment thereof to the plaintiff must be made not later than said specified date.

[8] ID.—ASSIGNMENT—PLEADING.—In such action, the allegation of the answer that in fulfillment of the agreement between plaintiff and defendant the latter purchased trees for the planting of the premises and on or about a given date (which was subsequent to the date on or before which defendant was required to assign to plaintiff the contract for the purchase of orange trees) took possession of the premises and commenced work thereon, but was ejected by the plaintiff, is not an allegation of assignment to plaintiff of the contract for the purchase of said orange trees or of any tender or offer of or attempt to make such assignment.

[9] ID.—ASSIGNMENT OF CONTRACT—PERFORMANCE.—The assignment of a contract is a thing capable of direct and immediate performance as soon as the contract exists.

[10] ID.—TIME—CONSTRUCTION.—The nature of the contract between plaintiff and defendant, particularly as it existed prior to the date when the lease was to take effect, and on or before which defendant was to assign to plaintiff the contract for the purchase of orange trees, was such that plaintiff was clearly entitled to the full benefit of the provision therein making time of the essence of the contract, for the contract reserved to the defendant until that date the right to withdraw therefrom.

[11] ID.—CONTRACT NOT SPECIFICALLY ENFORCEABLE—DEFENSE AGAINST QUIET TITLE ACTION.—A contract of purchase and sale which is not specifically enforceable, cannot be the basis of defense against an action to quiet title.

---

(1) 32 Cyc., p. 1360, n. 19, p. 1361, n. 31. (2) 32 Cyc., p. 1360, n. 19. (3) 36 Cyc., p. 600, n. 19. (4) 36 Cyc., p. 622, n. 19. (5) 36 Cyc., p. 623, n. 20, p. 631, n. 48. (6) 32 Cyc., p. 1360, n. 19, p. 1361, n. 31. (7) 13 C. J., p. 688, n. 46. (8) 13 C. J., p. 684, n. 4. (9) 5 C. J., p. 899, n. 54. (10) 13 C. J., p. 688, n. 51. (11) 32 Cyc., p. 1346, n. 79 New.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge. Reversed.

The facts are stated in the opinion of the court.

Tobias R. Archer and O'Melveny, Millikin, Tuller & Mac-Neil for Plaintiff.

B. J. Bradner and Seward A. Simons for Defendant.

CONREY, P. J.—These are two appeals in the same action. Plaintiff brought the action to quiet title to forty acres of land owned by him. By his answer the defendant admitted that the plaintiff is the owner and in possession of the land, but alleged that the same is subject to contract rights of the defendant. These rights are claimed under a contract dated September 10, 1921, whereby Archer, as party of the first part, leased said real property to Miller for the term of ten years, commencing November 1, 1921, at a total rent of $40,000, payable as follows: $4,000 on or before four years from November 1, 1921; $6,000 each year thereafter until the entire principal is paid, with interest on said $40,000 at the rate of seven per cent per annum, payable annually from the first day of November, 1921. The contract, after setting out many of the ordinary stipulations of a lease, provided as follows: "Should the said party of the second part during the faithful performance by him of all the covenants of this lease desire to purchase the said premises, then said party of the first part agrees to sell the said premises to the said party of the second part at any time during the faithful fulfillment of this lease, if

no default exists on the part of the said party of the second
part for the sum of $40,000, together with interest thereon
at seven per cent per annum, computed and payable annu-
ally from the commencement of this lease to the completion
of purchase. Any amounts paid on the $40,000 rent and
on the interest thereon may be applied to the purchase price
of principal and interest at the time of purchase, but unless
the whole purchase price is paid at once, this lease and the
terms thereof shall continue until the whole purchase price
is paid and completed.

"Should the said party of the second part fail to make
any of the payments agreed to be made in this lease, or
to fulfill any of the obligations of this lease or this agree-
ment, then the said party of the second part agrees to
and hereby does relinquish all rights and interest created
or conferred by or under this indenture and in all sums paid
thereunder, and in the property herein described.

"For the consideration of fifty ($50.00) dollars paid to
said party of the first part by said party of the second
part, receipt of which is hereby acknowledged, the said
party of the second part is hereby given the right to ter-
minate this indenture on or before November 1st, 1921, by
notice in writing, signed by him, to that effect; otherwise
this indenture is to continue in full force.

"It is agreed that said party of the second part is to
purchase for and plant all of said premises to first-grade
orange trees, during the year 1922, said planting thereof
to begin on or before March 2nd, 1922, or otherwise if
agreed to by both parties, and to be completed on or before
May 1st, 1922; and to that end, said party of the second
part as a part of the covenants of this lease, agrees to level
and put in good condition said land and premises prior to
any such planting, and agrees to purchase said first-grade
orange trees therefor by contract with one-third cash pay-
ment or more down, before or on November 1st, 1921, and
to assign such contract and all his interest therein to said
party of the first part on the condition and agreement that
if the provisions of this indenture are not fulfilled by said
party of the second part, he forfeits to said party of the
first part all his interest in said contract and orange trees
and all the payments made thereon to and the same shall
thereby vest in the party of the first part, as an absolute

assignment thereof to him, and he shall have the right thereupon to complete the payments under such contract for said orange trees, and take and receive all of said trees under said .contract. Said party of the second part agrees to plant, cultivate, irrigate and carefully and diligently care for all of said orange trees, and keep the same in good and thrifty condition on said premises during the existence of this indenture.

"All royalties or bonuses from oil are to apply on purchase price of land.

"In case said second party does not terminate this indenture, then immediately after November 1st, 1921, said party of the first part will furnish to said party of the second part a certificate of title of said premises, showing the same vested in said party of the first part and may at his option furnish such certificate at any time during this indenture, showing title to said premises free and clear of all encumbrances, except taxes accruing subsequent to the date of this indenture, and will furnish such certificate on the completion of the purchase of said premises by said party of the second part hereunder." . . . "It is mutually agreed that time is of the essence of this indenture and agreement."

The judgment, after first determining that the plaintiff is owner in fee of said land subject to the rights of the defendant under and by virtue of said agreement, further decreed as follows:

"II.

"It is further ordered, adjudged and decreed that said agreement is a valid and subsisting contract for the purchase of said property and that defendant is relieved from any forfeiture, or attempted forfeiture by the plaintiff of his rights under said contract, and that said defendant is entitled to have said contract concluded and carried out, but only on the terms and conditions hereinafter set forth.

"III.

"It is further ordered, adjudged and decreed that upon the payment to said plaintiff within sixty days from the date hereof of the sum of forty thousand dollars, and taxes accruing subsequent to the 10th day of September, 1921, that plaintiff execute and deliver to the defendant H. B. Miller, a good and sufficient deed of conveyance of said property, free and clear of all encumbrances.

"IV.

"It is further ordered, adjudged and decreed if the said plaintiff shall fail and refuse and neglect to make such conveyance, that the clerk of this court be, and he is hereby appointed commissioner to execute such deed, and that such transfer, when made by such clerk as such commissioner, shall operate as a transfer to defendant of the said premises.

"V.

"It is further ordered, adjudged and decreed, that upon the payment by the defendant of the said sum of forty thousand dollars, and the taxes, as aforesaid, and upon the execution of said deed of conveyance by plaintiff, or in lieu thereof by the clerk of this court as hereinbefore provided, the plaintiff and all persons claiming, or to claim, said premises, or any part thereof, through or under said plaintiff be, and they are, hereby restrained from thereafter asserting any right, title or interest in or to any of the property described in the defendant's answer and in the findings herein.

"VI.

"It is further ordered, adjudged and decreed, that in the event of failure of the defendant to pay to the plaintiff the sum of forty thousand dollars, which amount is hereby decreed to be due and payable to said plaintiff at the date of the trial of this action, and taxes accruing subsequent to the 10th day of September, 1921, within sixty days from the entry of the judgment herein, that the said agreement hereinbefore referred to be cancelled and of no effect, and that in such case said premises be restored to said plaintiff and that in such event said defendant has not any right, title or interest in or to said property, or any part thereof, and that in such event said defendant is thereafter perpetually restrained and enjoined from setting up any claim or claims thereto or any part thereof."

Plaintiff's appeal is from every part of the judgment adverse to him and in favor of the defendant. Defendant's appeal is in form an appeal from the entire judgment, but his sole objection is to that part of the judgment which requires him to make full payment within sixty days from the date of the judgment, and upon his failure to comply with that requirement, terminates all of his rights under the contract.

The first point presented by plaintiff is that the court erred in overruling his objection to the receipt of any evidence in support of the answer. The ground of the objection was that the answer failed to state a defense. Plaintiff contends that, for several reasons, the answer is fatally defective.

The terms of the judgment indicate that the court treated the answer as a cross-complaint. Possibly the answer was so intended by the ·pleader. The prayer thereof is: "That plaintiff take nothing by his cause of action, and that defendant be given possession of said land so that he may fulfill and carry out the agreement, and for costs of suit, and such other and further relief as to the court may seem meet in the premises."

[1] One of the plaintiff's points against the sufficiency of the answer is that it is silent upon the subjects òf fairness of contract and adequacy of consideration. He contends that the rule requiring that the facts respecting such matters be shown is as applicable to an answer through which the pleader seeks judicial recognition and declaration of an equitable interest as it is to a complaint or cross-complaint having a similar object. Although no authority has been cited in support of this proposition, we are inclined to the opinion that the rule should be so applied. The answer contains no allegation as to the actual value of the land, and the facts stated are not sufficient to show that the contract was just and reasonable or that the consideration was adequate. This is clearly insufficient for any purpose involving an equitable remedy. [2] The facts showing that the contract was just and reasonable should have been alleged. (*Salisbury* v. *Yawger,* 184 Cal. 783, 795 [195 Pac. 682].)

[3] It further appears that the contract is not one which furnishes a basis for mutuality of remedy. Therefore it is not a contract which can be specifically enforced. This is so because agreements to perform acts in the nature of personal service cannot be specifically enforced, and the contract herein provides for such service by defendant. By its terms it requires the defendant to prepare the land for planting and to plant, maintain and care for orange trees on the entire tract. [4] "It is elementary that mutuality of remedy is an indispensable prerequisite to the specific perform-

ance of a contract. The remedy must be mutual, as well as the obligation, and when the contract is of such a nature that it cannot be specifically enforced as to one of the parties, equity will not enforce it against the other. (*Cooper* v. *Pena,* 21 Cal. 404; *Stanton* v. *Singleton,* 126 Cal. 657 [47 L. R. A. 334, 59 Pac. 146]; *Los Angeles etc. Development Co.* v. *Occidental Oil Co.,* 144 Cal. 528 [78 Pac. 25]; *Pacific etc. Ry. Co.* v. *Campbell-Johnston,* 153 Cal. 106 [94 Pac. 623].) [5] 'Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance.' (Civ. Code, sec. 3386.)'' (*Poultry Producers of So. Cal., Inc.,* v. *Barlow,* 189 Cal. 278, 287 [208 Pac. 93, 96].)

[6] It further appears that the answer contains no statement of facts showing performance by the defendant or excuse for nonperformance by him of the conditions prescribed to be performed by him ''before or on November 1, 1921.'' For that reason we think that the answer fails to state a defense and fails to show any right to affirmative relief. Since the answer does not allege any repudiation by plaintiff of the contract until on or about the tenth day of November, 1921, it is plain that such repudiation cannot be a valid excuse for defendant's failure to do the things which he was to do before or on November 1st. [7] The provision of the contract whereby the defendant agreed to purchase first-grade orange trees to be planted on said land and to make said purchase ''by contract with one-third cash payment or more down before or on November 1, 1921, and to assign such contract and all his interest therein'' to the plaintiff, and that if this was not done the defendant would forfeit all his interest in said contract and orange trees and all pay. nts made by him, required not only that the contract be made not later than November 1st, but that the assignment thereof to the plaintiff must be made not later than November 1st. [8] The answer alleges that in fulfillment of said agreement the defendant purchased trees for the planting of said premises and on or about November 10, 1921, took possession of the premises and commenced work thereon, but was ejected by the plaintiff. This was not an

allegation of assignment to plaintiff of the contract or of any tender or offer of or attempt to make such assignment. The contract by its terms provided that time was of the essence thereof. "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly—as, for example, if it consists in the payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained." (Civ. Code, sec. 1657.) **[9]** The assignment of a contract is a thing capable of direct and immediate performance as soon as the contract exists. Here there was nothing alleged, nor is there anything in the terms of the contract, which would exempt defendant from his obligation strictly to perform his obligation to assign said contract before or on November 1st. **[10]** On the contrary, the nature of the contract, particularly as it existed prior to November 1st, was such that plaintiff was clearly entitled to the full benefit of the provision making time of the essence of the contract. For the contract reserved to the defendant until that date the right to withdraw therefrom. In other words, until then it was only an option under which defendant had the right to become lessee of the land with further right of purchase. We think that the court erred in overruling the objection of the plaintiff to the evidence offered in support of the affirmative defense. This error caused a miscarriage of justice, because it has resulted in a judgment to which the defendant was not entitled, even though it be conceded that all of the allegations of the answer are true. **[11]** It is sufficient on this proposition to refer to the rule, established by decision, that a contract of purchase and sale which is not specifically enforceable, cannot be the basis of defense against an action to quiet title. (*Jolliffe* v. *Steele,* 9 Cal. App. 212 [98 Pac. 544]; *Valentine* v. *Streeton,* 9 Cal. App. 640 [99 Pac. 1107]; *Crane* v. *Roache,* 29 Cal. App. 584, 587 [156 Pac. 375].)

Both parties are dissatisfied with that part of the judgment found in paragraphs III, V and VI thereof. For the reasons which have been stated in discussing the answer of defendant, the result necessarily follows that the defendant was not entitled to any judgment enforcing the contract by compelling the plaintiff to execute a deed, either upon pay-

ment of the sum of $40,000 to plaintiff within the time stated in the judgment, or at all. This being so, it is unnecessary to consider and determine the merits of defendant's contention that he should not have been required to pay the full contract price within sixty days from the date of the judgment, or upon failure so to do be deprived of his right to purchase the property.

The judgment is reversed.

Curtis, J., concurred.